. WILLIAM BLANCHARD *et al.*

*v.*

BERNHARD FRIED *et al.*

*Filed at Ottawa May 12, 1896—Rehearing denied October 13, 1896.*

1. MECHANICS' LIENS—*year in which materials were furnished supplied from date of claim.* A statement of claim filed with the circuit clerk for a mechanic's lien, dated September 1, 1892, shows the year of the delivery of the materials furnished by the date of such statement, although no year is attached to the dates of furnishing items, the months April, May, June and July only being specified.

2. SAME—*sufficiency of description of property in claim for lien.* A statement for a mechanic's lien sufficiently describes the property where, taken as a whole, enough is shown to inform parties interested upon what property a lien is claimed.

3. SAME—*single lien cannot be taken on distinct and separate properties.* A single lien cannot be had for materials furnished for six separate houses upon land held by the contracting owner under deeds for six lots separately, although such deeds have not been recorded and . the record title shows the land as a single tract, especially where the order for such materials indicates that they are to be used in building separate houses.

4. SAME—*single lien on separate properties as affected by time of recording deeds.* If the recording of the deeds to the contracting owner is of controlling importance upon the question whether a single lien can be had for materials furnished for several houses, the recording, before the filing of the claim for lien and before any considerable amount of the materials is delivered, of a deed describing the property as separate will prevent a single lien.

5. SAME—*effect of material-man's failure to keep distinct accounts, as affecting right to single lien.* Failure of petitioner for a material-man's lien upon several houses to keep separate accounts of the materials furnished to each house will not entitle him to a single lien.

*Fried* v. *Blanchard,* 58 Ill. App. 622, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county ; the Hon. RICHARD S. TUTHILL, Judge, presiding.

This is an appeal from a judgment of the Appellate Court reversing a decree of the circuit court of Cook county in favor of the present appellants, against appellees, establishing a material-man's lien.

The following facts appear from the report of the master to whom the case was referred in the circuit court: On the first day of April, 1892, one Frank Compton owned lot 1, block 7, in Pitner's addition to Evanston. On that day he made and acknowledged a plat subdividing said lot 1 into six lots, numbered from 1 to 6, inclusive, and conveyed them to Bernhard Fried by the description "lots 1, 2, 3, 4, 5 and 6, in Compton's subdivision of lot 1, in block 7, in Pitner's addition to Evanston." Fried on the same day executed and delivered six trust deeds to Frank R. Chandler, trustee, one on each of said lots, to secure parties therein named in the sum of $1000 each, money loaned Fried, and six other trust deeds to George W. Cass, trustee, one on each of said lots, to secure the payment to other parties therein named sums of money loaned to Fried, aggregating $3000. On the same day Fried gave to petitioners below this order:

"CHICAGO, ILL., *April 1, 1892.*
"*Messrs. T. B. Blanchard & Co.:*
"GENTLEMEN—Please deliver to Mr. F. Remus such lumber as he may need to build my six houses on Greenleaf and Asbury ave., South Evanston, and charge same to my account, and oblige.                Yours truly,
                BERNHARD FRIED."

On the 11th of that month material began to be de-livered on this order. The plat of the re-subdivision and the deed from Compton to Fried were filed for record April 19, and the trust deeds above mentioned were filed for record on April 20. All the material delivered to petitioners to that date amounted to only about $200.

On October 3, 1892, petitioners filed in the office of the circuit clerk of Cook county a paper, which they claim in their petition was a sufficient statement, as required by statute. (3 Starr & Curtis, chap. 82, sec. 4.) It is as follows:

"EVANSTON, ILL., *Sept. 1, 1892.*

"*Mr. Bernhard Fried, Asbury Ave. and Greenleaf Street:*

"Bought of T. B. Blanchard & Co., Office and Yard, Rail-road Track north of Depot:

|  | Feet. | Pieces. | Size. | Length. | Description. | Price. |
|---|---|---|---|---|---|---|
| April 11 | 1610 | 115 | 2-6 | 14 | 13½ | 21.74 |
| " " | 990 | 30 | 2-10 | 20 | 15 | 14.85 |

Then follows a long list of items, stated in the same manner as the first and second. It also shows certain items of material returned, for which credit is given, and foots up a balance due of $1693.67. No other remarks or explanations are made upon the face of the statement. It is verified by the affidavit of T. B. Blanchard, who swears that he is a "member of the firm of T. B. Blanchard & Co.; that the annexed statement of account is true and just; that Bernhard Fried is indebted to said firm of T. B. Blanchard & Co. for lumber and materials, as described in the annexed statement of account, after allowing him all the just credits and set-offs, in the sum of $1693.67; that all of said material was delivered at the request of said Bernhard Fried, on the dates men-tioned in said statement, at the following described prem-ises, where all of said material was used and for which buildings said material was ordered, to-wit, the houses now situated upon the following premises, to-wit: Lot 1, in block 7, in Pitner's addition to Evanston, afterwards

described as lots one (1) to six (6) inclusive, of Compton's re-subdivision of lot 1, in block 7, of Pitner's addition to Evanston." The six houses were erected on the six lots.

NORTON, BURLEY & HOWELL, for appellants:

The Mechanic's Lien law should be liberally construed as remedial legislation. *Bryson* v. *St. Helen*, 86 N. Y. 167; *Hicks* v. *Scofield*, 121 Mass. 381.

The construction of mechanic's lien laws should be reasonable, and not such as to render them strictly inoperative and ineffectual. *Culver* v. *Schroth*, 153 Ill. 437.

Any blunder or mistake in the statement for lien, made with no wrong intention and where no one is prejudiced thereby, ought not to vitiate the statement and defeat the lien. *Culver* v. *Schroth*, 153 Ill. 437 ; *Slight* v. *Patton*, 96 Cal. 384; *Treusch* v. *Shryock*, 55 Md. 330; *Hopkins* v. *Forrester*, 39 Conn. 351; *Baptist Church* v. *Trout*, 28 Pa. St. 153.

The court should consider the customs and forms known and recognized among commercial people and business men. *Belford* v. *Beatty*, 145 Ill. 414.

The lien for materials furnished or labor done attaches on the date of the contract. *Clark* v. *Moore*, 64 Ill. 273 ; *Thielman* v. *Carr*, 75 id. 385; *Paddock* v. *Stout*, 121 id. 571.

A lien for materials furnished for separate buildings on the same tract of land may be enforced as one. Phillips on Mechanics' Liens, sec. 202; *Stock Yards* v. *O'Reilly*, 85 Ill. 546; *Quimby* v. *Durgin*, 148 Mass. 105.

After the lien of a mortgagee attaches he is not bound to search the records for subsequent conveyances. The same rule applies to a mechanic's lien. *Matteson* v. *Thomas*, 41 Ill. 110; *Hosmer* v. *Campbell*, 98 id. 572; *Iglehart* v. *Crane*, 42 id. 261; *Boone* v. *Clark*, 129 id. 466.

STILLMAN & MARTYN, for appellees:

In *Fourth Baptist Church* v. *Trout*, 28 Pa. St. 153, the court say: "There must be a substantial compliance with the statutory requirement; and it has been held that a

claim was defective when no year was stated." *Rehrer* v. *Ziegler*, 3 W. & S. 258.

A single blanket mechanic's lien cannot be enforced against several detached buildings, under separate roofs and standing upon separate lots. The lien must be enforced, if at all, against each of the several premises according to the value of the work and materials furnished for them, respectively. *Culver* v. *Elwell*, 73 Ill. 536; *James* v. *Hambleton,* 42 id. 308; *Steigleman* v. *McBride*, 17 id. 300; *Stock Yards* v. *O'Reilly*, 85 id. 546; *Clark* v. *Moore*, 64 id. 273; *Thielman* v. *Carr*, 75 id. 385; *Paddock* v. *Stout*, 121 id. 571.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The petition seeks to enforce a lien for the whole amount due, against lot 1, block 7, as a unit. Two principal defenses were interposed upon the hearing of the cause: First, that the statement of the claim filed in the office of the circuit clerk was not in compliance with the requirements of the statute; and second, petitioners were not entitled to a lien against lot 1, block 7, as a whole, but at most they could only proceed against each of the six lots separately. These defenses were overruled by the circuit court, and a decree entered granting the prayer of the petition, finding the amount due $1693.67, with interest at five per cent per annum from July 8, 1892, and ordering that unless the defendants, or some of them, pay the same, said lot 1, in block 7, with all buildings and improvements thereon, or so much thereof as may be sufficient to realize the amount due the complainants, with costs of suit, be sold at public auction, for cash, to the highest and best bidder, etc.; also ordering that in making the sale the master shall first offer the lots of the subdivision separately, and receive bids therefor, and if the sum of the bids so received shall be sufficient to satisfy the lien, with interest, costs, etc., that then said bids shall be received by the master and a sale made thereon, but if sufficient shall not be

offered upon the bids for the lots separately to satisfy
the amount of said lien, interest and costs, then the mas-
ter shall offer the whole of the premises together, and
whichever way shall realize the most to apply upon the
lien the master shall consider as conclusive, and shall
sell the land upon such bids and issue certificates of pur-
chase in the manner required by law.   From that decree
the defendants appealed to the Appellate Court for the
First District.   That court held that the statement filed
in the office of the circuit clerk was insufficient to sup-
port petitioners' claim, for the reason that it failed to
show the year in which the material was furnished, hold-
ing that the date (September 1, 1892,) in the heading re-
ferred merely to the date when the statement was made
out, and could not be understood as indicating the year
in which the items were furnished, and hence it consid-
ered no other grounds of reversal urged.

The objection that the year in which the material
was delivered is not shown is admitted to be hypercrit-
ical, but is thought to be fatal under the rule announced
by this court that the statute providing for such liens
must be strictly construed.   This seems to us to carry
the rule of strict construction to the extreme, and the
decisions of this court cited in support of the conclusion
do not sustain it.   It is true the date "September 1, 1892,"
has reference to the time when the statement was made
out; but it does not follow that it may not also, in the
absence of anything to show the contrary, sufficiently
indicate the year in which the material was bought.   We
think it must be understood, when the whole statement
is considered, that the lumber mentioned in the several
items was sold in the months of April, May, June and
July of the year 1892, and that any one examining it
would so understand.

The objection that the statement fails to give a suf-
ficient description of the property to be charged with the
lien, is, in our opinion, of more substantial merit.   Sec-

tion 4 of the statute, *supra*, evidently means that the statement to be filed with the clerk shall contain an account of the materials furnished, after allowing credits, showing the times when the same were furnished and containing a correct description of the property to be charged with the lien, and shall be a complete statement of those facts within itself, which statement shall be verified by an affidavit,—and such is the effect of the decision in *McDonald* v. *Rosengarten*, 134 Ill. 126. If, however, all facts necessary to be stated are set forth in the paper filed, taken as a whole, and verified by affidavit, we see no good reason for holding that it would not be sufficient. The objection, in that case, would be to the form rather than to the substance of the statement. Taking this statement, with the affidavit attached thereto, we are inclined to the view that the premises upon which the lien is claimed are sufficiently described. It is true the language is not apt, but we think enough is shown to inform parties interested upon what property a lien was claimed.

The question then remains, were complainants, under the facts of this case, entitled to a lien upon lot 1, as a whole?—or, as counsel term it, a blanket lien? It was said in *Culver* v. *Elwell*, 73 Ill. 536 (at p. 540): "Another serious error assigned is, that the decree establishes liens upon all these buildings, five in number, on separate lots and different blocks, as upon one building. If these five buildings were one block, covered by the same roof, such decree would be proper. (*James* v. *Hambleton*, 42 Ill. 308.) We understand these premises to be distinct and separated from each other, and under separate roofs. This being so, the rule in *Steigleman* v. *McBride*, 17 Ill. 300, applies, where it is said, if the work done or material furnished are upon distinct premises the lien must be against each of the several premises, according to the value of the work and material on each."

But it is said, at the time the lien attached the property was one entire block, and therefore it attached to

the property in that condition,—in other words, it seems to be contended that when the order was given and the delivery of the lumber begun the ground was to be treated as lot 1, in block 7, because it was so of record at that time. As a matter of fact, when this lien attached lot 1 no longer existed as a single piece of property. It had been subdivided, and the owner, with whom petitioners contracted for material, held his title to the six lots separately. If the position is that petitioners were not chargeable with notice of such subdivision because the same had not then been recorded, the answer is, then they had no knowledge of title in Fried at all, because he then had no title of record whatever. When they dealt with him he held title to the six lots separately, and we are unable to see upon what just grounds they can claim to enforce a lien upon them in a different manner from that in which he owned them. The order for the lumber does not pretend to describe the property as one lot, but indicates that it is to be used in building six separate houses.

Under the circumstances stated, the fact that the plat of the subdivision and Fried's deed were not then on record gave petitioners no right to a lien upon the property as a whole. But even if the recording of these instruments were of controlling importance, when petitioners filed their claim for lien, and in fact before any considerable amount of the material had been delivered, they were filed for record. Their right to enforce a lien became complete only upon their filing that statement, and they were then chargeable with notice of every fact · which is or could be claimed to be necessary in order to require them to proceed against each lot separately. Under the facts of this case as to the incumbrance by trust deeds, the propriety and justice of adhering to the rule announced in *Culver* v. *Elwell, supra,* are manifest. It requires but a moment's reflection to see that the decree rendered below, as to the manner in which the property

is to be sold, may result in great hardship and injustice to these incumbrancers.

It is said that separate accounts were not kept of the lumber furnished to each house. It does appear, as we understand, that the houses were alike, and if this be true the lumber furnished to each can be readily apportioned. But if this is not true, the failure to keep separate accounts was the fault of petitioners themselves, and cannot be made the subject of complaint by them.

The decree of the circuit court and judgment of the Appellate Court will be reversed and the cause remanded to the circuit court, with directions to proceed according to the views herein expressed.

*Reversed and remanded.*