FREDERICK G. BUCKELY *et al.*

*v.*

THE COMMERCIAL NATIONAL BANK *et al.*

*Opinion filed February 14, 1898.*

1. MECHANICS' LIENS—*one failing to comply with terms of statute can not complain.* The lien of a mechanic is purely statutory, and one who fails to substantially comply with the terms of the statute preliminary to establishing such lien has no ground of complaint.

2. SAME—*mechanic not entitled to single lien on distinct properties not constituting one block.* Under the Mechanic's Lien law as it existed in 1893, a mechanic was not entitled to a single lien upon several houses located upon separate lots, not built so as to constitute a block of houses under a single roof.

3. SAME—*lien on distinct properties must be against each separately.* Under the Mechanic's Lien law in force in 1893, where work was done or materials furnished upon distinct properties the lien rested upon the several premises according to the value of the work and material bestowed upon each.

4. SAME—*when single lien cannot be apportioned.* As against third persons whose rights have intervened, a mechanic's lien, claimed as a single lien upon distinct properties, cannot be apportioned so as to preserve the lien upon each, where there is nothing in the statement filed with the circuit clerk to indicate the amount claimed against each property, or the times when the labor and materials were respectively furnished. (*Moore* v. *Parish*, 163 Ill. 93, and *Blanchard* v. *Fried*, 162 id. 462, explained.)

5. SAME—*final payment presumed due at time work is completed.* In the absence of any showing to the contrary, the final payment for work done under a contract is due upon its completion.

*Buckely* v. *Commercial Nat. Bank*, 62 Ill. App. 202, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

Appellee, the Commercial National Bank of Chicago, commenced its action in the Superior Court of Cook county, against John S. Woollacott and others, including these appellants, to foreclose two mortgages executed by Woollacott. The allegations of the bill as to appellants are, that they have, or claim to have, some interest in the premises as judgment or lien creditors, or otherwise, which interests have accrued since and are subject to the liens of complainant. Appellants, after answering, filed a cross-bill, setting up they had a mechanic's lien upon the premises for labor and materials furnished in painting and glazing certain buildings erected on the lots by the owner, Woollacott, for which they claimed a first lien.

The cause was referred to a master to take and report the evidence, together with his conclusions. On this issue he found that about the latter part of November, 1892, John S. Woollacott requested appellants to examine and make a bid for painting and glazing the buildings then being erected by him upon sub-lots 1 to 7 inclusive, being the same premises described in the bill, and including lot 3 in the subdivision; that they made the estimate as requested, and on December 5 sent Woollacott a proposition in writing, offering to do the work on the buildings, according to plans and specifications, for the sum of $2664, not to include mirrors or stained glass; that afterwards, in December or January following, Woollacott made a verbal agreement with them to do said work and furnish said material for the painting and glazing of said buildings for said sum of $2664; that they subsequently entered upon the work, and later completed the same; that the estimate upon which the contract was made was, upon sub-lot 1, $544.13; sub-lot 2, $390.09; sub-lot 3, $353.86;

sub-lot 4, $399.16; sub-lot 5, $332.05; sub-lot 6, $322.78; and sub-lot 7, $322.76,—making $2664.83. He also found that, in addition to the work done in accordance with the contract, they furnished other and extra labor and material upon said houses, as follows: Lot 1, tinting house, $90,—then follow several other items, the whole amount on that house being $162.68; on lot 2, $157.68; on lot 3, $108.68; on lot 4, $95.17; on lot 5, $80.18; on lot 6, $80.18; and on lot 7, painting fence, $5.18. He further found that they filed a statement of their lien with the clerk of the circuit court on December 16, 1893; that the work to be done under the contract was substantially finished as early as May or June, 1893, but that a slight amount of it was done as late as August of that year. He then stated that claimants seek one entire lien upon the several sub-lots, and found that the statement filed with the clerk claimed one lien upon all the lots for all the work done upon the several houses, and that four of the lots (1, 2, 3 and 4,) front east on Lake View avenue and Lincoln Park, upon which are located four residence buildings, all four houses being joined together by partition walls, but that it does not appear that they are under one roof; that immediately west of lots 1 to 4, running the entire length of their rear frontage, is a private alley four feet wide, and to the west of this alley are situated lots 5, 6 and 7, fronting northerly on Roslyn place, with the residence buildings thereon, one upon each lot and all joined by partition walls, but that it does not appear they are under the same roof. In the report of his conclusions he disallowed the lien. The four houses fronting east are numbered 71, 73, 75 and 77, and those fronting north, 47, 49 and 51.

The statement and notice of the lien filed with the clerk of the circuit court are as follows:

"Just and true statement and demand of F. G. Buckely & Bro. against John S. Woollacott, for work done and material furnished on and in buildings at numbers 47-49-51 Roslyn place,

and 71-73-75-77 Lake View ave., Chicago, Cook county, Illinois, described as follows, to-wit: being situated on sub-lots 1 to 7, inclusive, of re-subdivision of lots 19, 20 and all of lot 21, (except westerly ten feet thereof,) in Goudy & Goodwillie's subdivision of lots 2, 3 and 4, in assessor's division, block 4 of out-lot 'B,' Wrightwood, S. W. ¼ Sec. 28, T. 40, N., R. 14, in Cook county and State of Illinois:

| | |
|---|---:|
| For painting, glazing, etc., on the above described buildings, as per price agreed............................ | $2,664 00 |
| For extras on said described buildings, as follows, to-wit: | |
| For tinting at Nos. 49 and 51 Roslyn place, at $75 each.... | 150 00 |
| For tinting at Nos. 71-73 Lake View, at $90 each.......... | 180 00 |
| For tinting at No. 75 Lake View ave., and putting up friezes in parlor, dining room and front chamber in stencil; for frieze in middle chamber, rear chamber and reception hall; for paper frieze in sitting room... | 135 00 |
| For tinting corner house No. 77 Lake View avenue, legally described as aforesaid................................ | 90 00 |
| For frieze in parlor........................................ | 18 00 |
| For frieze in dining room.................................. | 10 00 |
| For frieze in hall......................................... | 8 00 |
| For frieze in library ..................................... | 4 00 |
| For frieze in front chamber............................... | 10 00 |
| For oil finishing book case in Mrs. Dickinson's house at No. 73 Lake View ave., legally described as aforesaid. | 6 00 |
| For re-painting front sash in Mrs. Dickinson's house, 73 Lake View avenue.................................... | 7 50 |
| For whitewashing basements of Nos. 75-77 Lake View avenue, legally described as aforesaid, two coats......... | 35 00 |
| Painting fences around all houses herein described....... | 36 25 |
| Total....................................... | $3,353 75 |

December 15, 1893.

"The above bill is correct ($3353.75).

JOHN S. WOOLLACOTT."

"Work on the aforesaid buildings was commenced January 20, 1893, and completed August 18, 1893, and material furnished during said time." (Then follows the affidavit.)

Upon the hearing the Superior Court approved the master's report, and entered its decree granting the relief prayed in the original bill and disallowing that sought by the cross-bill. The Appellate Court having affirmed that decree, this appeal is prosecuted.

LEROY E. MILLER, (ANDREW J. HIRSCHL, of counsel,) for appellants.

SLEEPER, McCORDIC & BARBOUR, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The only question for our decision is, whether or not the court below erred in refusing to sustain appellants' alleged lien.

*First*—Are appellants, under the facts of the case, entitled to a single lien against the entire property? We think it clear that each of the houses and lots described in the bill must be treated as a separate and distinct piece of property. The houses are not so built as to constitute one block of buildings, as in the case of *James* v. *Hambleton*, 42 Ill. 308. It also appears that appellants and the owner did not, in their contract, treat the buildings as one block. The contract showed the amount of work to be performed and material furnished on each building, ranging from $544.13 to $322.76. It has been uniformly held by this court that a single lien for work or material done or furnished upon several distinct buildings on separate lots cannot be established. Thus, it was said in *Culver* v. *Elwell*, 73 Ill. 536, (on p. 540): "We understand these premises to be distinct and separated from each other, and under separate roofs. This being so, the rule in *Steigleman* v. *McBride*, 17 Ill. 300, applies, where it is said, if the work done or material furnished are upon distinct premises the lien must be against each of the several premises according to the value of the work and material on each." This language applies with full force to the present case.

*Second*—Should the Superior Court have decreed a lien in favor of appellants against the property for the whole amount claimed, to be apportioned against the several lots and buildings? The fact that a single contract is entered into for labor or material to be performed

or furnished on several lots and buildings will not prevent the enforcement of a lien, provided the mechanic or material-man has put himself in a position to have the same enforced against each piece of the property to the extent of labor done or materials furnished for it. All that is required in such case is that "the lien must be against each of the several premises according to the value of the work and material on each." *Steigleman* v. *McBride, supra; Culver* v. *Elwell, supra.*

The difficulty with appellants' case is, that the statement or account of their demand filed with the clerk of the circuit court is wholly insufficient to authorize a decree apportioning the lien. Section 4 of the statute under which this proceeding was had provides: "Every creditor or contractor who wishes to avail himself of the provisions of this act shall file with the clerk of the circuit court of the county in which the building, erection or other improvement to be charged with the lien is situated, a just and true statement or account or demand due him, after allowing all credits, setting forth the times when such material was furnished or labor performed, and containing a correct description of the property to be charged with the lien, and verified by an affidavit," etc. And section 28 of the same act further provides: "No creditor shall be allowed to enforce a lien created under the provisions of this act, as against or to the prejudice of any other creditor or encumbrance or purchaser, unless a claim for a lien shall have been filed with the clerk of the circuit court, as provided in section 4 of this act, within four months after the last payment shall have become due and payable. Suit shall be commenced within two years after filing such claim with the clerk of the circuit court, or the lien shall be vacated." (Laws of 1887, p. 219.)

Each of these houses and lots being a separate and distinct piece of property, and the law being that appellants could only enforce a lien against each for the work

and material furnished on it, it would seem to follow
that a reasonable compliance with the foregoing sections
of the statute required appellants to in some way indi-
cate in their statement the amount which they claimed
against each. Manifestly, the purpose of requiring the
statement to be filed is that third persons dealing with
the property shall have notice of the amount, nature and
character of the lien, as well as the times when the ma-
terial was furnished or labor performed, and thus en-
able them "to know, from the claim itself, that it is such
as can be enforced." (*McDonald* v. *Rosengarten*, 134 Ill.
126.) Turning to the statement here relied upon as a
compliance with section 4, *supra*, nothing is there found
to in any way indicate how much of the item of $2664 for
painting, glazing, etc., on all the buildings, is claimed
against each, nor is there anything in it from which it
can be even inferred that an equal amount of work was
done upon each of the seven buildings,—which, as a
matter of fact, was not the case. A party purchasing or
receiving a mortgage upon either of these separate pieces
of property cannot be fairly chargeable with notice, from
this statement of the claim of lien, of any certain amount
against that particular house and lot, and to hold it suf-
ficient would be to ignore the reasonable purpose and
object of the statute.

There is another fatal objection to this statement. It
will be seen that section 4 requires it to "set forth the
times when such material was furnished or labor per-
formed." No attempt is made to comply with this re-
quirement. The only statement as to when the work
was done is, "work on the aforesaid buildings was com-
menced January 20, 1893, and completed August 18, 1893,"
—a period of about seven months. What information
does this give as to when the work was done upon any
particular building? For anything shown, either one of
them may have been completed in the month of January,
1893, (unless it be the whitewashing of the basement of

No. 75 and No. 77 Lake View avenue,) and yet the statement and affidavit thereto be literally true.   In fact, the master found that the work was substantially finished as early as May or June, 1893, only a slight amount of it being done as late as August.   The statute provides (section 28) that a lien shall not be good, as against creditors, unless the statement is filed within four months after the last payment is due.   In the absence of any showing to the contrary, payment was due for this work when it was completed, but the statement was not filed until December 16, 1893.   To meet this requirement it was attempted to show by the statement that the work was not completed until August 18.   Therefore, if any of the buildings were completed more than four months prior to filing the statement,—which, as we have seen, may have been true for anything appearing therein,—no lien could be enforced as to those buildings, against appellee.

Speaking of a statement for mechanic's lien, in *Campbell* v. *Jacobson*, 145 Ill. 389, we said (p. 403): "But a more serious difficulty with the statements is, that they wholly fail to set forth 'the times when such material was furnished or labor performed.'   That it should set forth these facts seems to be an imperative requirement of the statute.   *   *   *   But there is no attempt to give the date or dates of furnishing the material or the performance of the labor, nor is there anything in the statements from which those facts can be ascertained.   A mechanic's lien does not exist and is not enforceable of common right, but it is purely a statutory lien, and can be maintained only upon those conditions which the statute imposes; and the statute having required every creditor or contractor who wishes to avail himself of the provisions of the statute to file in a public office a sworn statement of a particular character, that requirement must be at least substantially complied with, and unless that is done his lien cannot be enforced."

The case of *Moore* v. *Parish,* 163 Ill. 93, in no way militates against the view here expressed as to either of the objections to the statement. We there held that the property, instead of being separate and distinct lots and houses, was a block of buildings, no price being fixed for the labor or material furnished upon either, and therefore the statement need not itemize the work or material or give the date of the performance or furnishing the same, but might properly state the time by giving the period during which the contract was executed. There were no several items of work and material, but only one item. While we there held that a single lien, under a single contract, could be enforced without reference to any particular building in the block, we also held that the lien should be apportioned and charged against each house and lot, so as to protect the equitable rights of subsequent purchasers and encumbrancers. All that is there said is in harmony with the view here expressed.

Neither does the case of *Blanchard* v. *Fried,* 162 Ill. 462, sustain the contention that the lien here sought to be enforced may properly be apportioned against the several pieces of property. In that case no question was made as to the sufficiency of the statement to justify an apportionment of the lien upon the several houses, which were, as shown by the evidence, all exactly alike. The material was furnished for all the buildings, no part of it being designated or intended for any particular one. Under this state of facts, in remanding the cause the court below was directed, if it could, to apportion the lien, but it was in substance said if that could not be done because of the failure of the claimants to keep separate accounts, the fault would be with them.

In the present case counsel seem to insist that because a court of equity might, from the facts found by the master, make the apportionment, the Superior Court erred in refusing to do so, and much of the argument is directed to the point that to hold this lien not enforceable will

prevent parties from making single contracts for material and labor on several buildings. If this were true it would furnish no reason for enforcing the lien. As we have repeatedly held, the lien given to the mechanic or material-man is purely statutory, and one who fails to substantially comply with its terms and provisions has no ground of complaint. This lien could be enforced if the claimants had conformed to the statute and the decisions of this court in taking the necessary preliminary steps, and so keeping their accounts as that they could have proceeded against the property so as to have the lien properly apportioned. Having failed to do so they cannot justly complain.

The decree of the Superior Court is in conformity with our previous decisions, and it will accordingly be affirmed.

*Decree affirmed.*