E. S. McMillan et al., Appellees, v. Joseph P. Casey Company et al. Rankin-Whitham State Bank, Appellant.

## Gen. No. 7,575.

1. MECHANICS' LIENS—*subjection of single fund to subcontractors' lien for machinery furnished contractor for use on separate contracts.* Subcontractors who sold a road contractor machinery and materials to be used in the construction of two separate sections of hard road under separate contracts with the county as to each section are entitled to liens against a fund remaining unpaid under the contracts at the time of abandonment of the work by the contractor, where they claim under Liens Act, sec. 23, Cahill's Ill. St. ch. 82, ¶ 23, providing for liens against a fund due for a public improvement, and not under section 1, Cahill's Ill. St. ch. 82, ¶ 1, relating to liens against land and improved property, and the principal contractor never did any work upon or became entitled to any pay for improving the second section, the fund in question being all due under the first contract.

2. MECHANICS' LIENS—*subcontractors' right to lien not waived by taking collateral security.* A subcontractor who furnished a road contractor, under contract with a county for paving roads, with machinery and materials for use in the performance of such contract did not lose his right to a lien under Liens Act, sec. 23, Cahill's Ill. St. ch. 82, ¶ 23, against the fund due the principal contractor, by taking collateral security, since the amendment of 1903, providing that the taking of additional security shall not operate as a waiver of any right of lien a subcontractor may have "by virtue of this Act," although found only in section 1, Cahill's Ill. St. ch. 82, ¶ 1, is applicable to section 23.

3. MECHANICS' LIENS—*particularity of lien notice to county.* A claim of lien against a fund remaining unpaid to a road contractor with a county, filed by subcontractors for the purchase price of road machinery and materials furnished to the principal contractor, is not defeated by an erroneous description in the notice of lien filed with the county officials, of the road section under contract, the description in the notice following that in the contract, since the statute provides only that the claimant shall notify the official or officials without any provision as to the particulars of the notice, especially where the objection is not raised by the county, which received and acted upon the notice without objection, but by a subsequent assignee of the fund.

4. MECHANICS' LIENS—*extent of lien for machinery furnished public road contractor.* A subcontractor who furnished to a contractor with a county for the construction of hard road, certain machinery of a permanent nature, no part of which was substantially used up or injured by its use on the contract in question and was subsequently employed on other improvements after it went out of the hands of the principal contractor following his abandonment of the contract in question, is not entitled to a lien for the unpaid purchase price thereof against the unpaid portion of the contract price, under Liens Act, sec. 23, Cahill's Ill. St. ch. 82, ¶ 1, providing for liens against funds due for public improvements, such section contemplating a lien only for the machinery, materials or supplies actually going into the improvement or consumed in the course of construction or for the value of the use of the machinery and tools used on the work and thereafter removed to other work.

Appeal by defendant from the Circuit Court of Vermilion county; the Hon. WALTER BREWER, Judge, presiding. Heard in this court at the April term, 1923. Reversed and remanded. Opinion filed July 10, 1923. Rehearing denied October 10, 1923.

REARICK & MEEKS, for appellant.

ACTON, ACTON & SNYDER, for appellees.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

E. S. McMillan & Son filed a bill in equity in the circuit court of Vermilion county for the foreclosure of a mechanic's lien, under section 23 of the statutes concerning liens, pertaining to public improvements. [Cahill's Ill. St. ch. 82, ¶ 23.]

The county of Vermilion and also, among others, the Mid-Western Company, and Chase Harding, W. F. Slattery, P. H. Slattery and W. I. Buchanan were made parties defendant. After answering, the Mid-Western Company and Chase Harding separately filed cross-bills in which they claim liens as subcontractors against the same funds.

One of the original parties defendant is the Rankin-Whitham State Bank, incorporated, which is also made party defendant to each of the cross-bills.

During the pendency of the suit all controversies between the other parties complainant and defendant appear to have been adjusted, and when the case finally came on for hearing, the contest narrowed itself down to one between the two cross complainants above named and the bank as to whether the cross complainants had a lien and hence a superior right to a balance of funds in the hands of the county. The trial court held with cross complainants, giving them each a lien, and the bank appeals.

The material facts are these: On May 14, 1919, the Joseph P. Casey Company, incorporated, was awarded two contracts for the construction of several sections of hard road, in Vermilion county, known and designated in the written contracts as subdivision A-1 of division No. 1; subdivision A-3 of division No. 3, which were parts of a system known as the Vermilion County Bond Issue Roads.

Casey & Company, under the contract for subdivision A-1 of division No. 1, were to receive a consideration of $36,902.70, the county furnishing the cement, payments to be made on estimates to amount of eighty per cent and twenty per cent to be retained until final completion and acceptance of the work. Casey & Company started work on subdivision A-1 and continued work until September 17, 1919, when it abandoned the job and the contract was forfeited, and the work was completed by William Cutler at an expense of $2,602.90. When the county finally accepted

the road in question, there was a balance unpaid on the contract price, after paying Cutler, of $16,174.99.

This suit was started September 19, 1919, and the Rankin-Whitham State Bank on June 9, 1920, applied to the county board, representing itself to be the assignee of all moneys due to Casey & Company, under the above contract, by written assignments dated prior to the forfeiture of the contract, and offering to indemnify the county against all liability should any claims of subcontractors be thereafter established against the county. This proposition was accepted, an indemnity bond was given, and the county paid over the money a few days later to the bank, aggregating the sum of $16,174.99. Casey & Company never did any work upon the second contract and the same was forfeited and canceled. The claim of the bank rests upon three written assignments, the first dated June 11, 1919, filed with the county clerk June 12, 1919; the second dated July 3, 1919, and filed with the clerk the same day, and the third dated July 18, 1919, and filed with the clerk on that day, and these assignments are based upon loans made in excess of the amount of said balance. No decree was entered against the county of Vermilion, and by all parties the Rankin-Whitham State Bank and the fund in its hands by such assignments has been treated as the real defendant.

After these contracts were obtained from the county, Joseph P. Casey, president of the Casey Company, purchased from the Mid-Western Company, the cross complainant, one 10-ton Case roller and 1 grader for the purpose of using the same in constructing the roads mentioned in the two above-mentioned contracts, at an agreed price of $2,100, on which $700 was paid in cash, and for the balance two notes were given, one for $700, dated July 12, 1919, payable September 22, 1919, and one for $500, dated July 14, 1919, payable October 14, 1919, both notes drawing interest at six

per cent, and by way of security a chattel mortgage was taken upon these machines.

A few days later he purchased also a pair of wheels and an axle for $165 on open account, to be used in connection with one of the above machines. These articles were shipped to Vermilion county and were actually in use by the Casey Company so long as it continued on the job.

The court found by its decree that the equitable assignments above mentioned and the notice thereof, to the county, were prior in point of time to the forfeiture of the contract and prior to the giving of notice by each of the cross complainants.

The notice of the Mid-Western Company was delivered to the county clerk and county treasurer on September 17, 1919. Two notices were served on Vermilion county authorities by the Mid-Western Company on September 17, 1919. The notices contained a description of the articles furnished by the Mid-Western Company to Casey & Company and the amount due, $1,360, for the balance of the purchase price of said machinery. In the first notice it is stated that the machinery was used for the construction of certain hard roads in Vermilion county, known as division No. 3, subdivision A-1. The second notice was the same, except it described the road as division No. 3, subdivision A-3. This notice says that the same machinery was furnished for use under the second contract.

The record also shows that a firm styled Harding & Slattery, composed of James A. Harding, Patrick H. Slattery, William F. Slattery and W. I. Buchanan, several years before the time in question in this suit, had held a contract with Vermilion county for the construction of a portion of the roads in question here which they never had completed. One of the partners, James A. Harding, died in the year 1916 and cross complainant Chase Harding was appointed his administrator, and took charge also of the affairs of the

partnership. This firm had some small tools, some sheds, pumps, engines, etc.

It is shown that Harding & Slattery made a written contract with the Joseph P. Casey Company to sell them the above-mentioned articles for use in building the hard roads in Vermilion county. This was in form a conditional sale for a price of $1,690 and expressly reserved title to all articles sold. The transaction was evidenced also by a note in that amount, dated June 13, 1919, due in seventy days with interest at seven per cent. A few days later some well casings and screens were sold at a price of $210. On the back of this contract appears this indorsement: "Assigned to Chase Harding to apply on his mortgage." Signed, Harding & Slattery, by P. H. Slattery. On the back of the note appears a blank indorsement signed in the same manner.

The Chase Harding cross-bill was originally filed in his name alone, but during the trial it was amended, over the objection of the defendant, so as to make as additional cross complainants, Patrick H. Slattery, William F. Slattery and W. I. Buchanan.

This cross-bill alleges that Chase Harding, Patrick H. Slattery, William F. Slattery and W. I. Buchanan, copartners, trading as Harding & Slattery, furnished to the Joseph P. Casey Company certain machinery, materials and tools (the list is set forth) to be used in constructing hard roads in said county known as subdivision A-1, division 3, under a contract between said county and said Casey Company dated May 14, 1919; that said claim was afterwards assiged by said partnerships to said Chase Harding; that the balance due on that account is $1,927.50; that the county has money in its hands due said principal contractor; that notice was given to the county, and prays for a lien.

By the amendment the three additional parties were added, and the words "division No. 3" were stricken out, and the words "division No. 1" were inserted.

From the evidence it appears that these articles

were used by the Casey Company in the construction work, but none became part of the completed work save some expansion joint—a part of which went into this job, and a part into other roads not under this contract, but how much went into each is not disclosed.

The notice given to the county by Chase Harding is dated September 19, 1919, and was served September 25, 1919. It follows the cross-bill above recited, or rather the cross-bill follows the notice. The road is described as division No. 3, subdivision A-1, and claim is made for $1,927.50, with interest from this date, for the balance of the purchase of the machinery in question. Nothing is said, however, as to any note nor as to the debt bearing any rate of interest. Nothing is averred as to the existence of a subcontract, nor as to when any payment should become due under its terms.

At the time the above notice was given, Chase Harding gave another notice to the county, which is the same in substance, but describes the road as division No. 3, subdivision A-3.

There is in this record no conflicting evidence. The questions are purely as to the legal conclusions to be drawn from the uncontroverted facts.

The court decreed that the claims of the cross complainants be established as liens against the fund due to Casey & Company, and be paid by appellant bank out of the fund, and appellant assigns error.

Appellant first contends that the subcontracts for the machinery and tools in question were each for a lump sum, and were each for the furnishing of articles to be used in the performance of two separate, distinct and independent contracts between the Casey Company and Vermilion county, and therefore could not be asserted as a lien against funds arising out of the performance of one contract, at least, nor as against the equities of the bank, and that neither could the

amount be apportioned between the two contracts in the absence of such a provision in the statute. Appellant cites many cases applicable to the apportionment of claims under section 1 of the Liens Act [Cahill's Ill. St. ch. 82, ¶ 1] and to the effect that an entire contract cannot be apportioned. It is held that the right to an apportionment, where one contract relates to two improvements, depends solely on the enactments contained in the statute. *Aurand v. Martin,* 188 Ill. 117; *Schmidt v. Anderson,* 253 Ill. 29. And where material is furnished for two contracts, no part being designated or intended for a particular one, a lien for the whole cannot be sustained against one improvement. *Buckely v. Commercial Nat. Bank,* 171 Ill. 284. An entire contract cannot be apportioned and the performance of it enforced in fragments. *Adler v. World's Pastime Exposition Co.,* 126 Ill. 373. But the cases cited are all constructions of section 1 of the Liens Act and these claims are founded upon section 23 of the Act [Cahill's Ill. St. ch. 82, ¶ 23] for a public improvement, and to reach, not land and the improved property, but a fund, and there is a different construction to be placed upon section 23 from the plain language in section 1. Under section 1 of the Act, the furnishing must be preceded by a contract, express or implied; there is no such provision in section 23. The latter section provides that any person who shall furnish material, apparatus, etc. The last clause of section 23, as to pro rata payments, "in proportion to the amount due under their respective contracts," is a mere legislative fiat, where there is an amount due, denominating it "their contract," as being entitled to have the same paid out of the fund.

The articles in this case were furnished to Casey & Company to be used, it may be conceded, upon two separate sections of the road, but Casey & Company never did any work upon or became entitled to any pay for improving the second section. Casey & Com-

pany only worked upon subdivision A-1, and the fund in appellant's hands all grows out of one contract. The terms of the statute, section 23, seem to provide a lien to any person who has furnished material, apparatus or machinery for the section or contract, for which the said fund was the consideration, regardless of any prior contracts, and even if there had been no prior contract, express or implied, for the furnishing of said material and machinery, and we do not, therefore, concur in this assignment of error by appellant as applied to the facts in this case.

Appellant next contends that if any right to a lien existed it was lost and waived by appellees taking collateral security. This was the construction as to mechanic's liens prior to the act of 1903. *Clark v. Moore,* 64 Ill. 273; *Kankakee Coal Co. v. Crane Bros. Mfg., Co.,* 138 Ill. 207; *Equitable Loan & Investment Ass'n v. Lyon & Sons' Lumber & Mfg. Co.,* 72 Ill. App. 489, affirmed 174 Ill. 31, but by the revision of the Liens' Act in 1903, section 1, it was provided, that "the taking of additional security by the contractor or subcontractor shall not be a waiver of any right of lien which he may have by virtue of this Act, unless made a waiver by express agreement of the parties." This language is not found in section 23, but the words of the amendment are: "By virtue of this Act," and it becomes a question of construction whether the language, "By virtue of this Act," refers solely to section 1 or is to be applied to the additional liens provided for in the chapter on liens.

It is a statutory provision that all general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the legislature may be fully carried out. (Chapter 131, sec. 1, Rev. St., Cahill's Ill. St. ch. 131, ¶ 1.) The term "contractor and subcontractor" relates to the same identical personages and in the same relationship in the two sections, 1 and 23. It is as consistent

to construe what section 1 provides as to collateral security, with the provisions of section 23, as it is to construe the provisions of section 15 [Cahill's Ill. St. ch. 131, ¶ 15] in relation to "the wages of labor," upon all questions arising between different contractors having liens *"under this Act."* In the opinion of this court, the provision of section 1, as to the taking of collateral security applies as well to the claims and demands of contractors and subcontractors, under the provisions of section 23, and there is no merit in appellant's contention.

As to the claim of appellees Harding and Slattery, it appears in abstract and attached to a deposition, "in form of a conditional sale of the list of articles, heretofore described, reserving title until payment of the $1,690 note." This document is not abstracted or its provisions set out, and whether it comes within the description of a "collateral security," we forbear to express any opinion.

Appellant contends that the notices given to the county were not sufficient, in that in the contract made by Casey & Company for the unperformed work, the second contract, there was an error in the description of the section, it being described as subdivision A-3 of division 3, and the notices followed the description in the contract, when the true description should have been subdivision A-3 of division 1. The court, on proper proof, struck out the "division 3" as surplusage and inserted "division I." The statute only provides that "the claimant shall notify the official or officials of the county," etc., without any provision as to the particulars of said notice.

It is sufficient to say, that the only purpose of the notice was for the benefit of the municipality to prevent its paying out the money to the contractor. In this case the county of Vermilion received and acted upon the notice, and has raised no objection to the notice, and it is not for any other person to raise this objection. *First Nat. Bank of Chicago v. City of*

*Elgin,* 136 Ill. App. 453; *Spalding Lumber Co. v. Brown,* 171 Ill. 487. Appellant in this case has no rights that Casey & Company could not assert, if it had not made the assignment, and, in addition, appellant has apparently waived this objection in the indemnifying bond given by appellant to Vermilion county.

It is contended by appellant that the larger portion of the machines and implements furnished by the cross complainants, and for which a lien has been decreed, did not go into or constitute a part of the improvement, but that such machines and implements were purchased by claimants as a part of their capital investment, and while used to some extent upon this improvement, at the completion of said contract, they were equally available for the contractor to use on other and further improvement work and contracts, and therefore were not construction work, material or machinery for which a lien could be claimed under said section 23.

The Mid-Western account was for one 10-ton roller, one grader and one pair of wheels. The Harding-Slattery claim contained such items as, "one traction engine," "one Sultan pump" and "associated engine," "one roll leather belting," "one pitcher pump" and other items of a similar nature and some items also that may have been substantially used up in the construction of this improvement. The testimony showed that the witness or witnesses had seen some of this machinery employed on other improvements, since it went out of the hands of Casey & Company. There is no pretense that any particular portion of these machines was substantially used up or even injured to any extent by its use upon the contract in question for Vermilion county.

The construction of said section 23, as to what items are lienable, is therefore squarely raised in this case and by this appeal. Appellant contends, following the construction given to section 1, as passed upon in *Haas Elec. & Mfg. Co. v. Springfield Amusement Park*

*Co.,* 236 Ill. 452; *Rittenhouse & Embree Co. v. Brown & Co.,* 254 Ill. 549; *Kelly v. Johnson,* 251 Ill. 135; *Manowsky v. Stephan,* 233 Ill. 409, and *Turnes v. Brenckle,* 249 Ill. 394, that there can be a lien only for such material and machinery as necessarily enters into and becomes a part of the improvement. Appellee, on the other hand, insists that the court, in *Alexander Lumber Co. v. Farmer City,* 272 Ill. 264, has fully construed said section 23 and held it applicable and to provide a lien in cases like the claims involved in this case.

Section 1 of the Liens Act provides for a lien against private property, when *"material, fixtures, apparatus* or *machinery    *    *    *    used for the purpose of or in the building,"* etc., while section 23 provides: "Any person who *shall furnish material, apparatus, fixtures, machinery* or *labor* to any contractor    *    *    *    for public improvement    *    *    *    *shall have a lien on the money,"* or fund, and section 23 further provides: *"There shall be no preference between the persons serving such notice, but all shall be paid pro rata in proportion to the amount due under their respective contracts."*

The language of these provisions is different without question and renders them subject to different constructions. One statute provides a lien against an individual's property ownership, where all of the intricacies of title are involved. The other, section 23, involves only the distribution of a public fund, in equity, the only limitations of which are the protection of the contractor's rights, the public corporation and that no preference shall be shown among creditors, but that all shall be paid *"pro rata in proportion to the amount due under their respective contracts."*

The court did hold in *Alexander Lumber Co. v. Farmer City, supra* (p. 275):

"The construction of section 23 is not governed by

the construction given the provisions of the act relating to the enforcement of liens afforded against the owner's real estate. These provisions of the act give no lien against money in the owner's hands due the contractor, but the lien is against the real estate and improvement. Section 23 is as follows: 'Any person who shall furnish material, apparatus, fixtures, machinery or labor to any contractor for a public improvement in this State, shall have a lien on the money, bonds or warrants due or to become due such contractor for such improvement: *Provided,* such person shall, before payment or delivery thereof is made to such contractor, notify the officials of the State, county, township, city or municipality whose duty it is to pay such contractor of his claim by a written notice. * * * It shall be the duty of such official so notified to withhold a sufficient amount to pay such claim until it is admitted, or by law established, and thereupon to pay the amount thereof to such person, and such payment shall be a credit on the contract price to be paid such contractor.' This section does not provide for a lien against the improvement or the property improved, but only gives the subcontractor or claimant a lien on the money, bonds or warrants due or to become due the contractor for material, apparatus, fixtures, machinery or labor furnished the contractor by the claimant, for a public improvement."

Section 23, in the last clause, provides for the pro rata payment, among claimants, *"for the amount due under their respective contracts."* "Respective contracts" means contracts for *"material, fixtures, apparatus or machinery."*

The foreclosure of mechanic's liens is under the forms of equity and except as changed by statute, should be according to the principles of equity. Under the construction contended for by appellees, the subcontractor having furnished an expensive outfit, capable of doing several years' work and having a vendor's lien upon such machines, can abandon his vendor's lien and claim all of the contract proceeds

of the contractor, until the outfit is paid for, to the serious and ruinous disadvantage of the materialman, and those who make the contractor's success possible. This contravenes the doctrine of marshaling of assets, opens wide a door to fraud and tends to relieve from claim and lien valuable property in a failing debtor's hand. If the value of investment capital can be charged, as a lien, against this fund and contract price, then in equity and to the end that all shall be paid *"pro rata"* in proportion to the *"amount due"* under their *"respective contracts,"* precisely as provided by the terms of said section 23, all such machines and implements, so used on the improvement, should be added to the fund or lienable contract price, or the claimant should be charged with the value of such machines or implements as the derelict contractor removes to other fields and contracts.

The rule contended for by appellees is unreasonable and is not supported by authority. If such construction of the statute were permissive, there would be nothing to prevent contractors, while moving from one improvement to another, to sell their outfits to each other, in a circle, that the respective vendors in each case might file a claim against the contract fund, to the disadvantage and defeat of the purpose for which the section was passed.

From an examination of all of the authorities cited, we are not able to discover that any court, under a similar statute, has allowed a lien further than for supplies going into the structure, or entirely consumed in the course of construction, or for the value of the use or improvement of tools and machines used in the course of construction. *Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co.,* 98 Neb. 27, 151 N. W. 942; *United States Rubber Co. v. American Bonding Co.,* 86 Wash. 180, 149 Pac. 706; *Standard Boiler Works v. National Surety Co.,* 71 Wash. 28, 43 L. R. A. (N. S.) 162, and it is plain that the legislature of this State

in the enactment of said section 23 did not intend to go further.

Neither did the court go further than this in *Alexander Lumber Co. v. Farmer City, supra.* We quote from page 274 of that case:

"A part of the claim allowed appellant Arbogast & Co., was $35 for the use of an engine and pump, and a small sum for oil barrels, a tank, and possibly some other insignificant items. The lumber furnished the Howes Bros. Company by the Alexander Lumber Company was used by the contractor in sheathing and shoring the trench, in building forms at the retaining wall or head wall, and as a track upon which to run the heavy excavating machine. The decree finds, from the evidence, that the lumber for which the Alexander Lumber Company claim was allowed in part was actually used in the construction of the work. It did not become a part of the completed sewer, but was left in the trenches, where used for shoring or other purposes, for the protection of the men at work and also to protect the sewer. Some of it, employed for other purposes, was used up by the contractor in the work and was not returned to the lumber company or taken away for further use. It is claimed by appellee that $58.29 of the claim of E. M. Burr & Co. was for pipe furnished for use in carrying water to the trench or the mixing boxes where the concrete was mixed and did not become a part of the improvement. The same thing is claimed as to a part of the claim of H. L. Williams. It is also claimed that a small part of the claim of appellant J. C. Gould was for work in repairing machinery and tools."

And the court held (p. 276):

"In our opinion the court was justified in allowing the claims of appellants to be paid out of the special assessment levied and collected to pay for the improvement."

The court was careful to say, as to the lumber, that it was used up by the contractor in the work and was not returned to the lumber company, and the items of "oil barrels" and a "tank" are spoken of as insignifi-

cant matters, and the item $58.29 for pipe furnished for use in carrying water to the trench and mortar boxes where concrete was "mixed," in the description of the item would lead to the natural inference that such pipe might be rendered valueless by such use. We cannot believe that our courts will come to the construction of this statute as contended for by appellees. It has not been so construed in *Alexander Lumber Co. v. Farmer City, supra,* and to this court such a construction has much the appearance of converting a court of equity into a common-law court for the collection of general debts and effecting a garnishment proceeding in a mechanic's lien case.

Appellant has assigned error upon the interest charges allowed by the court below, but as the decree is to be reversed for errors otherwise appearing in the record, which may take out a very substantial part of this item, we do not comment upon that contention further than to say that under the rule as to mechanic's liens, the claimant is entitled to interest, according to the contract made, upon all such items as are properly covered by the provisions of said section 23. *McDonald v. Patterson & Co.,* 186 Ill. 381; *Carey-Lombard Lumber Co. v. Jones,* 187 Ill. 203.

For the error pointed out, the decree of the lower court is reversed and the cause remanded to the circuit court of Vermilion county for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

## ON PETITION FOR REHEARING.

On petition for rehearing filed by appellees, insisting that in view of the possible doubt as to the construction given to section 23 of the Mechanic's Liens Act [Cahill's Ill. St. ch. 82, ¶ 23] in *Municipal Engineering & Contracting Co. v. City of Farmer City,* 193 Ill. App. 457, which case was reversed in *Alexander*

*Lumber Co. v. Farmer City,* 272 Ill. 264, and the issues involved in this case, covering machines purchased for use upon the improvement and then removed to other works, that it is more important that the Supreme Court make a definite rule as to the issues involved in this case than that the decree of the lower court be reversed and the cause remanded to take further evidence, as to the value of the use of certain machines and material, and for other purposes, we deem it fitting to modify the orders entered and deny the petition for rehearing.

Under the opinion as rendered, it was the holding of this court that with the cause remanded to the lower court the lien claimants would have the right to put in further evidence and establish their claims for all supplies and material that went into and formed a part of the improvement for all such material as was used up or consumed, and the value of the use of all machines and material used in and about the improvement, but not entirely consumed or used up in the construction of the improvement; but it was the holding of this court that tools, machines and material merely used on this work and then removed to other works could only constitute a claim in the value of their use.

The only item shown by the evidence in this case to have formed a part of the improvement was the 4,500 feet ½ x 7 Carey expansion joint, reasonably worth the sum of ten cents per foot or a total of $450, furnished by appellees Harding and Slattery. There are many other items in the claim, but none shown to have formed a part of the improvement, nor is the value of the use of any such items shown.

It follows that the decree will be reversed in part and a decree entered in this court.

It is the order of this court that a decree be entered on the cross-bill filed by the Mid-Western Company against the cross defendants to that cross-bill, revers-

ing the decree of the lower court as to such cross-bill and dismissing the same for want of equity.

It is further ordered that the decree of the lower court in the matter of the cross-bill of Harding and Slattery be reversed and that a decree be entered in this court that the county of Vermilion is indebted to said cross complainants in the sum of $450, with interest on said sum at the rate of five per cent per annum from June 13, 1919, making a total indebtedness of $548.83 as of the first day of the October term, 1923, of this court, and that the said county of Vermilion be adjudged to pay the same.

It is further ordered that the cross complainants, Mid-Western Company and Harding and Slattery, cross complainants in said cross-bills, each severally pay one-half of the costs on this appeal.

*Reversed and decree entered in this court.*