THE ALEXANDER LUMBER COMPANY *et al.* Appellants, *vs.*
THE CITY OF FARMER CITY, Appellee.

*Opinion filed February 16, 1916—Rehearing denied April 6, 1916.*

1. SPECIAL ASSESSMENTS—*payment for work done before first installment of assessment is collected should be by voucher.* Under section 88 of the Local Improvement act no authority is given the city to issue warrants for the payment of work done ·on the contract before the first installment of the assessment is collected, but in such cases payment is required to be made by vouchers, payable out of the first installment when collected.

2. SAME—*distinction between a voucher and a warrant under the Local Improvement act.* Under the Local Improvement act a voucher is issued against the first installment of an assessment before it is collected, to show what services have been rendered or expenses incurred, the amount due therefor and that the party to whom it is issued is entitled to payment out of the first installment when it is collected, and it is issued upon the certification of the board of local improvements or of some officer designated by the board for that purpose, whereas a warrant is drawn against a fund in the treasury.

3. SAME—*when bonds must become due under the Local Improvement act.* Under section 86 of the Local Improvement act a bond must become due some time in the year in which the installment out of which it is payable matures, not later than the 31st day of December next succeeding the January in which the installment is due, and any bond issued to become due later is illegal.

4. SAME—*contract for completion of work abandoned must be let in same manner as contract for original work.* The contract for the completion of work to be paid for by special assessment which has been abandoned by a public contractor must be, let to the lowest responsible bidder, in the same manner as the contract for the original work, where the cost thereof exceeds $500.

5. MECHANICS' LIENS—*city cannot, as against rights of lienors, claim benefit from payment contrary to statute.* Where warrants are issued or bonds delivered to a public contractor contrary to the provisions of a statute, the city cannot, as against the rights of lienors, claim any benefit from its illegal action as a payment out of the special assessment fund.

6. SAME—*when a city cannot be credited, against lienors, for money spent in completing work abandoned.* A city cannot be given credit, against the claims of lienors, for the payment .of any sum out of the special assessment fund for the completion of a

work abandoned by the contractor, where the cost of such completion exceeded $500 and the city did not let the contract therefor as required by law.

7. SAME—*construction of section 23 of the Mechanic's Lien law.* Section 23 of the Mechanic's Lien law, in favor of persons furnishing materials, etc., to a public contractor, does not provide for a lien against the improvement or the property improved, but gives the claimant a lien upon the money, bonds or warrants due and to become due the contractor for material or labor furnished the contractor by the claimant; and it is not necessary to prove that the materials or appliances furnished the contractor entered into the construction of the improvement.

8. CONTRACTS—*what is not sub-letting a contract.* A contract for the construction of a sewer, which provides that no part of the work shall be sub-contracted without written consent of the board of local improvements and that the contractor shall furnish all tools, labor and materials, does not preclude the contractor from hiring labor and purchasing materials or machinery without the consent of such board.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

McMILLEN & McMILLEN, and LEMON & LEMON, for appellants.

HERRICK & HERRICK, and H. M. STEELY, for appellee.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This is an appeal, upon a certificate of importance, from a judgment of the Appellate Court for the Third District reversing a decree of the circuit court of DeWitt county in a proceeding instituted in that court by the appellants and others, under section 23 of the Mechanic's Lien act of 1903, to enforce liens against money alleged to be due from the city of Farmer City to a contractor for work done under a contract with the city to construct a system of sewers in

said city, which was to be paid for in part by general taxation and in part by special assessment. The suit was originally begun by a bill filed in the circuit court by the Municipal Engineering and Contracting Company, and shortly afterwards the Alexander Lumber Company filed a similar bill. To these bills numerous lien claimants were made defendants. The city of Farmer City answered both bills, and other lien claimants answered setting up their claims, and some of them filed intervening petitions. The cases were consolidated, and the answers of claimants setting up their claims were by order of the court directed to stand as intervening petitions. The right of all the claimants to a lien upon money alleged to be in the hands of the city is based upon the same grounds.

In August, 1908, Farmer City passed an ordinance for the construction of a system of sewers, to·be paid for in part by general taxation and in part by special assessment. The total amount assessed to pay the cost of the improvement, after deducting the costs and expenses of spreading, levying and collecting the assessment, was $19,577.18. On April 20, 1909, the city entered into a written contract with the Howes Bros. Company, by which said company agreed to do the work for $16,888.15. The Howes Bros. Company agreed to furnish all tools, labor and materials for the construction of the work according to the ordinances, plans, profiles and specifications, which were made a part of the contract. By paragraph 11 of the contract the Howes Bros. Company agreed not to assign the contract nor to sub-let any of the work without the written consent of the board of local improvements indorsed on the contract. Paragraph 16 is as follows: "It is further agreed that all funds becoming due said contractor under this contract shall be and are subject to the provisions of section 23 of an act entitled 'An act to revise the law in relation to mechanics' liens,' approved May 18, 1903, and in force July 1, 1903." The Howes Bros. Company entered into a bond in the sum

of $6500, with the American Fidelity Company as surety, conditioned upon its doing the work in accordance with the terms of the contract and ordinances. The contract provided for the completion of the work by November 1, 1909. It was not completed by the contractor by that time, but on that date the Howes Bros. Company abandoned the work and it was afterwards completed by the city.

Those claiming liens on the fund alleged to be in the possession of the city and due to the contractor were the Whitehall Sewer Pipe and Stoneware Company, S. G. Arbogast & Co., the Alexander Lumber Company, the Chapman Valve Manufacturing Company, the E. R. Darlington Lumber Company, F. H. Cox, the South Bend Foundry Company, the Municipal Engineering and Contracting Company, Jesse McMurphy, E. M. Burr & Co., H. L. Williams, Joseph C. Gould and John Berry, being thirteen in number. The circuit court allowed, in whole or in part, all of the claims and decreed their payment by the city of Farmer City unless they were paid in twenty days by the Howes Bros. Company. The city prosecuted an appeal to the Appellate Court for the Third District, and that court reversed the decree of the circuit court as to all of said claims and remanded the case to the circuit court, with directions to dismiss the bills and intervening petitions for want of equity. From that decree eight of the claimants, namely, the Alexander Lumber Company, F. H. Cox, Joseph C. Gould, the Whitehall Sewer Pipe and Stoneware Company, S. G. Arbogast & Co., the E. R. Darlington Lumber Company, H. L. Williams and E. M. Burr & Co., have prosecuted this appeal to this court. The other five claimants have not joined in the appeal.

By the terms of the ordinance the cost of the improvement was divided into five installments. The first installment of $4677.18 became due January 2, 1910. The second, third, fourth and fifth installments were for $4100 each, and for the purpose of anticipating their collection,

bonds were to be issued bearing interest at the rate of five per cent per annum. There was paid to the contractor by the city from June, 1909, to November 4, 1909, upon warrants issued, $6631.22. Three of these warrants were made payable out of the "general fund," three out of the "special fund" and the remaining two out of the "general-special fund." In addition to these payments on warrants, bonds aggregating $3900 were delivered to the contractor previous to the time the city took over the work. The bonds were dated October 4 and 19, 1909. The last warrant issued for the payment of money to the contractor bore date November 4, 1909. At that time the only claimants who had given notice to the city of their claims against the contractor were the Alexander Lumber Company and E. M. Burr & Co. The former filed notice of its claim with the city November 1, 1909, and the latter October 4, 1909. Subsequently notices were filed with the city by all the other claimants. The payments made to the contractor by the city by warrants drawn ($6631.22) and by bonds delivered ($3900) aggregate $10,531.22. The expense to the city of completing the work after the Howes Bros. Company abandoned the contract was $3903.03. The aggregate of these three amounts is $14,434.25. This amount the city claims was lawfully paid out, and that in no event can any lien of the claimants attach to it. The city admits it has a balance on hand of $2580.83, being the difference between the amount agreed to be paid the contractor and the amount actually expended in paying for the work.

Appellants contend (1) that the issuing of warrants by appellee to the contractor was illegal and does not constitute a payment on the contract out of the special assessment fund; (2) that the bonds delivered to the contractor were illegal and invalid and did not constitute a payment out of the special assessment fund; (3) that the cost of completing the improvement after its abandonment by the contractor exceeded $500, and the city was not authorized to

complete it but was required to let the contract for its completion to the lowest responsible bidder in compliance with the Local Improvement act. For these reasons appellants contend that the city is to be considered and treated, so far as their rights are concerned, as if it had never paid or attempted any payment on the contract out of the special assessment fund and has on hand a sufficient sum to pay the claims as liens.

It is undeniable that in the respects claimed by appellants the city did not observe the requirements of the statute. Section 42 of the Local Improvement act authorizes the division of an assessment for a public improvement into installments. The first installment becomes due on the second day of January next after the date the first voucher is issued on account of work done. No bonds are authorized to be issued for that installment. The second installment becomes due one year after the maturity of the first installment, and the remaining installments annually thereafter until all are due. Bonds are authorized to be issued for all the installments except the first. The board of local improvements is required by said section to file in the office of the clerk of the court in which the assessment was confirmed, a certificate of the date the first voucher was issued, and the amount thereof, within thirty days after the voucher was issued. On July 29, 1909, the board of local improvements filed in the office of the clerk of the county court a certificate showing that the first voucher under the ordinance for the improvement was issued July 12, 1909, for $1345.88. No such voucher is contained in the record, but on July 12, 1909, a warrant was issued by the city which is in the following form:

"Treasurer of said city pay Howes Bros. Co. or bearer for 85% of work accepted on sewer, one thousand three hundred forty-five 28/100 dollars, out of moneys in the treasury not otherwise appropriated, belonging to the general-fund fund.

CHARLES P. ARBOGAST, *Mayor*.
Countersigned by David Mitchell, *City Clerk*."

The record shows that on the tenth day of June previous, a warrant was issued to the Howes Bros. Company for $951.72, payable out of moneys in the treasury not otherwise appropriated, belonging to the general fund. From that date up to November 4, 1909, six other warrants were issued to the contractor, all in the same form, except that some of them designated the fund out of which they were to be paid as "general fund," some "special fund" and some "general-special fund." The issuing of all these warrants appears to have been ordered by the city council upon claims presented and allowed, in the same manner as other claims against the city for indebtedness incurred in the conduct of the city government. At the time these warrants were issued the first installment was not due and no part of it appears to have been collected. Section 88 of the Local Improvement act provides that if the first installment is not collected when payments for the work fall due, "vouchers therefor may be issued, payable out of the first installment when collected. Such vouchers shall bear no interest and shall be paid from said installment when collected." No authority is given the city to issue warrants for the payment of work done on the contract before the first installment is collected, but in such cases payment is required to be made by vouchers, payable out of the first installment when collected. By section 91 it is required that payments on a contract for an improvement as the work progresses may be made upon certificates of the board of local improvements or of some officer designated by the board for that purpose, either in money, vouchers or bonds, in the manner prescribed in the act. There is a distinction between a voucher and a warrant, as used in the statute. A voucher is issued against the first installment before it is collected, to show what services have been rendered or expenses incurred, the amount due therefor and that the party to whom it is issued is entitled to payment out of the first installment when it is collected, and it is issued upon the certification

of the board of local improvements or of some officer designated by the board for that purpose. A warrant is drawn against a fund in the treasury. No voucher appears to have been issued against the first installment and no attempt appears to have been made to comply with the requirements of the statute, for the aggregate of the warrants issued exceeded the amount of the first installment by $1954.04. They were not made payable out of the first installment but were payable out of moneys in the treasury, not otherwise appropriated, belonging to the "general fund," "special fund" and "general-special fund." They were issued contrary to the provisions of the statute, and as against the rights of appellants the city cannot claim any benefit from its illegal action as a payment out of the special assessment fund.

The bonds delivered to the contractor as part payment on the contract were dated October 4 and 19, 1909, and aggregated $3900. Each bond recites that it is issued in anticipation of the second installment and "expires Jan. 2, 1914." Section 86 of the Local Improvement act prescribes the requirements of such bonds and a form in which they may be made. Each bond is required to state on its face the installment out of which it is payable, and shall become due some time in the year in which the corresponding installment matures, the date to conform, as nearly as may be, to the time when the installment will be collected, *"Provided, also,* that it shall be lawful to provide in the case of any one or more of the bonds in any series, that such bond or bonds shall not become due until some subsequent date, not later than the 31st day of December next succeeding the January in which the installment against which such series is issued shall become due and payable." All of the bonds issued and delivered to the Howes Bros. Company state on their face that they are issued against the second installment of the assessment. That installment became due in January, 1911, but the bonds were not due until Janu-

ary 2, 1914, three years after the installment against which they were issued matured. The latest date the statute authorized fixing the maturity of the bonds issued against the second installment was the 31st day of December, 1911. These bonds being in plain violation of the requirements of the statute were illegal, and as against the rights of lienors cannot be treated as a payment on the contract by the city out of the special assessment fund. The authority, power and duties of the city are strictly statutory, and the authority and powers conferred by the statute must be exercised in the manner prescribed thereby. *Webster* v. *People,* 98 Ill. 343; *Clarke* v. *City of Chicago,* 185 id. 354; *Lyman* v. *City of Chicago,* 211 id. 209.

The city was prohibited by the statute from itself completing the work. The cost of completing the work was $3903.03. Section 74 of the Local Improvement act provides that any public improvement to be paid for wholly or in part by special assessment or special tax, when the expense thereof shall exceed $500, shall be let to the lowest responsible bidder in the manner prescribed in the act for letting contracts by the municipality. Section 82 provides that if contractors who have taken a contract shall not complete the work within the time mentioned in the contract or within such further time as the board of local improvements shall or may give them, said board may re-let the unfinished portion of the work "after pursuing the formalities prescribed hereinbefore for the letting of the whole in the first instance." All contractors for such public work are required to give a bond to the satisfaction and approval of the board of local improvements, in such sum as the board shall deem adequate, conditioned for the faithful performance of the contract. In *City of Chicago* v. *Hanreddy,* 211 Ill. 24, the court considered the right of the city to complete an unfinished public improvement which had been abandoned by the contractors, the cost of which was not to be paid by special assessment, without letting the contract

to bidders.  It was held the city could not do so.  It appears from the opinion that the decision, which was rendered in 1904, was based upon section 50 of article 9 of the Cities and Villages act.  At that time said section 50 required all contracts for the making of any public improvement to be paid for in whole or in part by special assessment, and any work or other public improvement when the expense thereof exceeded $500 should be let to the lowest bidder.  This statute was amended in 1911, and as amended it authorized any work or other public improvement, "except any work or public improvement to be paid for in whole or in part by special assessment," to be constructed either by contract let to the lowest responsible bidder, or, by a two-thirds vote of all the aldermen or trustees elected, it might be constructed by the city in the manner prescribed in such section.  Both by said section 50 and section 74 of the Local Improvement act, where a public improvement is to be paid for in whole or in part by special assessment, the contract to do the work is required to be let to the lowest responsible bidder, and by section 82 the completion of the work, where it has been let to and abandoned by a contractor, must be let in the same manner as the contract for the original work.  The completion of the work, therefore, by the city of Farmer City was not only unauthorized but was directly forbidden by the statute, and in our opinion the city cannot be given credit for the payment of any sum whatever out of the special assessment fund for the completion of the work.

As between the rights of appellants and appellee the city is to be treated as having on hand the entire amount of the special assessment collected for the purpose of paying the contract for the improvement.  This was the view adopted by the chancellor in the circuit court.  The decree finds that at the time of the commencement of the suit, and at the time notice was given the city of the claims of the parties for liens, the city had in its treasury, in money or unde-

livered local improvement bonds belonging to this fund, $17,015.08, subject to be applied to the payment of said claims. The chancellor allowed interest on all the claims of appellants but one, the amount fixed as due each being as follows: The Whitehall Sewer Pipe and Stoneware Company $1538.50; Arbogast & Co. $1179.65; the Alexander Lumber Company $2590; the E. R. Darlington Lumber Company $74.44; F. H. Cox $819.05; E. M. Burr & Co. $323.96; H. L. Williams $82.54; Joseph C. Gould $179.17. The decree finds that these claims were for material and labor furnished by the claimants under contracts with the Howes Bros. Company, and orders said company to pay the several lienors the amounts fixed in the decree as due them, within twenty days, and in default of such payment orders that the city of Farmer City pay to the master in chancery, within thirty days, the aggregate amount of the claims for which liens 'were allowed, and the master was directed to distribute the money to the lienors in accordance with the terms of the decree.

A part of the claim allowed appellant Arbogast & Co. was $35 for the use of an engine and pump, and a small sum for oil barrels, a tank, and possibly some other insignificant items. The lumber furnished the Howes Bros. Company by the Alexander Lumber Company was used by the contractor in sheathing and shoring the trench, in building forms at the retaining wall or head wall, and as a track upon which to run the heavy excavating machine. The decree finds, from the evidence, that the lumber for which the Alexander Lumber Company claim was allowed in part was actually used in the construction of the work. It did not become a part of the completed sewer but was left in the trenches, where used for shoring or other purposes, for the protection of the men at work and also to protect the sewer. Some of it, employed for other purposes, was used up by the contractor in the work and was not returned to the lumber company or taken away for further use. It is claimed

by appellee that $58.29 of the claim of E. M. Burr & Co. was for pipe furnished for use in carrying water to the trench or the mixing boxes where the concrete was mixed and did not become a part of the improvement.    The same thing is claimed as to a part of the claim of H. L. Williams. It is also claimed that a small part of the claim of appellant J. C. Gould was for work in repairing machinery and tools.    Appellee insists that no lien against money in the hands of a city, due a contractor, can be allowed in favor of sub-contractors or parties furnishing the contractor material, under section 23, unless the material furnished entered into and became a part of the improvement.    *Rittenhouse & Embree Co.* v. *Brown & Co.* 254 Ill. 549, *Haas Electric Co.* v. *Amusement Co.* 236 id. 452, and some other similar cases, are relied on to support this contention.    In those cases the court was construing the provisions of the Mechanic's Lien law relative to the enforcement of liens provided by the act against the property of the owner, and it was held that under the act as it then existed, to entitle one furnishing material to a contractor to a lien against the real estate of the owner the material must have entered into and become a part of the improvement or it must have been furnished for that purpose.    The construction of section 23 is not governed by the construction given the provisions of the act relating to the enforcement of liens afforded against the owner's real estate.    These provisions of the act give no lien against money in the owner's hands due the contractor, but the lien is against the real estate and improvement.    Section 23 is as follows: "Any person who shall furnish material, apparatus, fixtures, machinery, or labor to any contractor for a public improvement in this State, shall have a lien on the money, bonds or warrants due or to become due such contractor for such improvement: *Provided,* such person shall, before payment or delivery thereof is made to such contractor, notify the officials of the State, county, township, city or municipality whose duty it is to

pay such contractor of his claim by a written notice. It shall be the duty of such official so notified to withhold a sufficient amount to pay such claim until it is admitted, or by law established, and thereupon to pay the amount thereof to such person, and such payment shall be a credit on the contract price to be paid such contractor." This section does not provide for a lien against the improvement or the property improved, but only gives the sub-contractor or claimant a lien on the money, bonds or warrants due or to become due the contractor for material, apparatus, fixtures, machinery or labor furnished the contractor by the claimant, for a public improvement. The property of the owner cannot be disturbed in the enforcement of this lien, and in our opinion the court was justified in allowing the claims of appellants to be paid out of the special assessment levied and collected to pay for the improvement.

It is also contended by appellee that appellants are barred from asserting their claims against money in the hands of the city due the contractor, by paragraph 11 of the contract, which provides that no part of the work shall be sub-contracted without the written consent of the board of local improvements. We think this is a misapprehension of the provisions of the contract referred to. No part of the work was sub-let within the meaning of the contract as we construe it. The contractor agreed to furnish all tools, labor and materials for the construction of the work, and it would be an unreasonable interpretation of the contract to construe it to mean that no labor could be hired or material bought except by the written consent of the board of local improvements. It was certainly never contemplated by the contract that the contractor should make all the materials required to be used and do all the work itself without the hiring of any labor. Paragraph 11 related to sub-letting the construction of part of the work, and not to contracts made by the contractor for material and labor.

We conclude that the circuit court did not err in decreeing the payment of the claims of appellants, and the judgment of the Appellate Court reversing the decree of the circuit court in favor of appellants is reversed and the decree of the circuit court as to them is affirmed.

*Judgment reversed.*