John Acker and William E. La Shelle, trading as Savanna Oil Company, Appellees, v. C. C. Vanderboom et al., trading as C. C. Vanderboom & Sons, and Southern Surety Company, Appellants.

Gen. No. 7,414.

1. MECHANICS' LIENS—*materials which may be subject of lien.* Gasoline, oil and grease used by a contractor in machinery operated in the construction of a public road are proper subjects of a mechanic's lien under section 23 of the Lien Act, Cahill's Ill. St. ch. 82, ¶ 23.

2. MECHANICS' LIENS—*rights of public contractor's surety in suit to establish lien against funds in hands of State.* The rights of a surety company growing out of its execution of a road contractor's bond were not involved in a suit to establish a mechanic's lien on money, bonds and warranties in the hands of the State, though the surety company had assumed the duty of completing the contract upon default of the contractor, and it cannot complain that the court declared the lien and reserved for further consideration its rights under the bond.

Appeal by defendants from the Circuit Court of Carroll county; the Hon. W. J. EMMERSON, Judge, presiding. Heard in this court at the October term, 1924. Affirmed. Opinion filed January 31, 1925. Rehearing denied April 9, 1925.

J. L. BREARTON, for appellants.

CHARLES E. STUART and SIMS, WELCH, GODMAN & STRANSKY, for appellees; F. J. STRANSKY, of counsel.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellees, John Acker, William E. La Shelle, co-partners doing business as the Savanna Oil Company, filed their bill in the circuit court of Carroll county against appellants, C. C. Vanderboom, H. P. Vanderboom, and E. J. Vanderboom, copartners doing business as C. C. Vanderboom & Sons, and the Southern Surety Company, a corporation, for a lien under section 23 of the Lien Act [Cahill's Ill. St. ch. 82, ¶ 23], for gasoline, oil and grease furnished by appellees to Vanderboom. There was a hearing before the chancellor, a decree was entered in favor of appellees for $4,639.04, and from that decree an appeal has been prosecuted to this court.

The case was tried upon a written stipulation of fact substantially as follows: The Savanna Oil Company was engaged in selling petroleum and allied products. Vanderboom & Sons were engaged in building State highways. The Southern Surety Company was an Iowa corporation doing business in Illinois. On November 15, 1922, Vanderboom entered into a contract with the State of Illinois for the construction of a concrete road for $110,942.92, and the Southern Surety Company executed a bond for the full amount of the contract price conditioned for the faithful performance of the contract. On June 9, 1923, Vanderbooms entered into another contract with the State of Illinois for the construction of another road for $61,470, and the Southern Surety Company executed a bond for $30,735. About the time these contracts were entered into the Vanderbooms agreed to buy grease, oil and gasoline from appellees for the operating and lubricating of trucks, concrete mixers and other machinery, and in the operation of lights used in the construction of the highways. Up to November 1, 1923, oil, gasoline and grease were furnished under the first contract amounting to $3,256.79, and under the second contract amounting to $1,384.75. These materials were to be paid for on delivery, but

no payment was made. The Vanderbooms defaulted on their contract and assigned to the Southern Surety Company all money due, or to become due, under the contracts, and the Surety Company assumed the burden of completing the work. It was agreed that there was $10,000 due under the first contract, and $17,000 due under the second contract which had not been paid by the State. On December 19, 1923, the Vanderbooms and the Southern Surety Company notified the State of the default and of the assignment of the balance due. On December 26, 1923, the State served two notices on appellants declaring the contracts forfeited and notifying the Southern Surety Company to take immediate steps to complete the work. The Southern Surety Company completed the work, appellees filed their claim for lien in manner and form as provided by law, and later filed their bill to establish the same. It is conceded under the stipulation that all requirements of the law have been complied with, and that there is sufficient money available to pay this claim if properly established.

The principal ground of reversal urged is that the oil, grease and gasoline furnished by appellees were not the subject of a lien under section 23 of the statute. Authorities from other jurisdictions have been cited in support of this contention. These authorities are in conflict. Some of them hold that coal used in an engine under a contract of this kind, and oil, grease and gasoline furnished in the operation of machinery upon work of this character are not the subject of a lien. Other authorities hold that such articles are the subject of a lien. A review of these authorities would serve no good purpose, as some of them are based upon statutory provisions, and in others a fine distinction is drawn by the courts as to what articles are the subject of a lien and what articles are not the subject of a lien. This case must be determined upon the provisions of section 23 of the Lien Act, and the

decisions of the Supreme Court of Illinois construing that section.

Section 23 provides that any person who shall furnish material, apparatus, fixtures, machinery or labor to any contractor having a contract for a public improvement in this State shall have a lien on the money, bonds or warrants due, or to become due, such contractor under such contract, provided such person shall, before payment or delivery thereof is made to such contractor, notify the officials of the State whose duty it is to pay such contractor, of his claim by a written notice, and provided further that such lien shall attach only to that portion of such money, bonds or warrants against which no voucher or other evidence of indebtedness has been issued and delivered to the contractor by or on behalf of the State at the time of such notice. There shall be no preference between the persons serving such notices but all shall be paid pro rata in proportion to the amount due under their respective claims. Smith's Stat. 1923, p. 1287. [Cahill's Ill. St. ch. 82, ¶ 23.]

In *Alexander Lumber Co. v. Farmer City*, 272 Ill. 264, claims for lien were filed under section 23. The circuit court allowed the claims in whole or in part. Part of the claim allowed Arbogast & Company was $35 for the use of an engine and pump, and a small sum for oil barrels, a tank and possibly some other insignificant items. The lumber furnished by the Alexander Lumber Company was used by the contractor in sheathing and shoring the trench, in building forms at the retaining wall or head wall, and as a track upon which to run the heavy excavating machine. The decree found that the lumber for which the claim was allowed, in part, was actually used in the construction of the work. It did not become a part of the completed sewer, but was left in the trenches, or used for shoring or other purposes for the protection of the men at work and also to protect

the sewer. Some of it employed for other purposes was used by the contractor in the work and was not returned to the lumber company or taken away for further use. It was contended that $58.29 of the claim of Burr & Company was for pipe used in carrying water to the trench, or the mixing boxes, where the concrete was mixed, and that this pipe did not become a part of the improvement. The same thing was claimed as to a part of the material furnished by H. L. Williams. It was also claimed that a small part of the material furnished by Gould was for work in repairing machinery and tools, and it was insisted that no lien could be allowed for any material under section 23 unless the material furnished entered into and became a part of the improvement. From the decree of the circuit court allowing these various items an appeal was prosecuted to the Appellate Court of the Third District where the decree of the circuit court was reversed. [193 Ill. App. 457.] A certificate of importance was granted and upon a hearing the Supreme Court reversed the judgment of the Appellate Court and affirmed the decree of the circuit court. The opinion in that case, standing alone, is not only ample authority for the allowance of the claims in this case, but is controlling and binding on this court, unless that opinion has been subsequently overruled or modified by the Supreme Court.

The rule laid down in the *Alexander* case was followed by the Appellate Court of the Fourth District in *Siemer Milling Co. v. Moritz*, 227 Ill. App. 459, where a claim for lien was filed under section 23 and allowed for feed furnished for work animals performing services in the execution of the contract, and for coal used in an engine, under a contract for the building of hard roads.

It is contended by appellants that the rule announced in the *Alexander* case has been overruled by the Supreme Court in the case of *McMillan v. Joseph*

*P. Casey Co.*, 311 Ill. 584. In the latter case the claim for a lien by the Midwestern Company was for certain machinery, material and tools amounting to $1,360. Chase Harding claimed a lien for a traction engine, small tools, pumps, well casings, water pipe, expansion joints and other items, amounting to $2,350.72. All of these claims were allowed by the decree of the circuit court. Upon appeal to the Appellate Court the decree was reversed except as to $450 for expansion joints which were used in the improvement. [231 Ill. App. 422.] A certificate of importance was granted and the Supreme Court affirmed the judgment of the Appellate Court. The Supreme Court found in its opinion that none of the material for which a claim was filed was consumed in or became a constituent part of the improvements, except the expansion joints for which a claim was allowed, and for that reason the parties furnishing the other materials were not entitled to a lien.

It may be as claimed by appellants that there are some statements in each of these two opinions which are not just as definite as they might be, and it is also possible that some small items allowed in the *Alexander* case did not come within the rule of law announced in that case, but in the main we do not think there is very much, if any, conflict in the rules of law announced in these cases when the cases are considered together in connection with the various items for which claims for liens were made.

In the two cases there is a marked distinction between the kinds of material under consideration. In the *Alexander* case the materials furnished included $35 for the use of an engine and pump, a small sum for oil barrels and a tank. There is nothing in the opinion in that case to show whether these items entered into the improvement or not. They were allowed by the court and that finding is conclusive here under the facts as stated in the opinion. The claim

for lumber was allowed in part, and it is stated that part of the lumber went into the improvement, hence we must assume that the lumber for which the claim was allowed became a part of the improvement. There was also a claim for pipe furnished to carry water, together with work in repairing machinery and tools, and the opinion states that it is claimed that these items did not become a part of the improvement and for that reason they should not have been allowed. The Supreme Court did not state in its opinion whether these items did or did not enter into the improvement and we have no means of determining that fact. Outside of the statement in the seventh paragraph of the syllabus it is not held in the *Alexander* case that it is not necessary to prove that the materials furnished entered into the improvement. Under the facts in the *Alexander* case we have the right to assume that the items for which a lien was allowed were the proper subject of a lien. If the items in that case were the proper subject of a lien we can see no valid reason why the oil, grease and gasoline furnished in the case at bar were not also the subject of a lien, provided the rules of law announced in the *Alexander* case have not since been modified.

On the other hand, in the *McMillan* case, so far as the opinion shows, the items for which liens were claimed included certain machinery, materials and tools, a traction engine, pumps, well casing, water pipe, expansion joints, and other items. In other words, all of these items, except the expansion joints, did not enter into the improvement but were component parts of the machinery and equipment of the contractor which he not only used upon that particular job but which he removed at the completion of his contract for use upon other jobs. It certainly cannot be successfully contended that such items as these are the subject of a lien under the statute when they comprise the equipment of the contractor, do not

become a part of the improvement, are not consumed in the improvement, but are removed from the improvement to be used upon other work.

When these two cases are considered in detail, we do not think there is as much conflict in them as is contended or that the *McMillan* case was intended to overrule or modify the *Alexander* case. In fact that statement is made in the *McMillan* case. On page 588 it was said: "It is contended, however, by appellants that it is the plain wording of section 23, as considered by this court in *Alexander Lumber Co. v. Farmer City*, 272 Ill. 264, that as to a public improvement all that is required is that such material, machinery and the like be furnished the contractor, and that in itself is sufficient to give rise to a right for lien for the purchase price, whether it enters into or was furnished for the permanent use of the improvement. We cannot agree with this interpretation of the above decision. In our judgment there was no intention of holding in that opinion that machinery and apparatus, simply because furnished a contractor for public work, could be made the basis of a mechanic's lien regardless of whether it becomes a constituent part of the improvement. * * * Even if it be conceded, as argued by counsel for appellants, that one or two small items were allowed in that case which may not have actually entered into the structure, the opinion does not justify the interpretation that, regardless of how the machinery, apparatus or material is used, a lien may be had for the purchase price of the same." On page 590 it was said: "It would seem that generally it would be presumed that a contractor is prepared with machinery and necessary appliances to do his work, and that such items are furnished upon his own credit and as a part of his working equipment and business and are not furnished upon the implied credit of the public."

From our examination of these two cases our con-

clusion is that the rule of law announced in the *Alexander* case is that materials, services and rentals which actually are used or consumed during the progress of the work are the proper subjects of a mechanic's lien, even though they do not become a constituent, physical and component part of the completed structure; and that in the *McMillan* case it was the intention to confine the opinion to a denial of the right to a lien for the purchase price of machinery, materials and tools forming a part of the contractor's plant and equipment which are not consumed in the construction of the improvement, and which the contractor intends to retain after the completion of the contract and use on other jobs. In the case at bar the oil, grease and gasoline for which a lien was claimed were actually used or consumed during the progress of the work, even though they did not become a constituent, physical and component part of the improvement, and for this reason the circuit court was not in error in entering the decree in this case.

It is further contended by appellants that the decree was erroneous in declaring a lien against money, bonds and warranties in the possession of the State and then reserving further consideration of the rights of the Southern Surety Company until another time, for the reason that under the default and assignment the Southern Surety Company had a direct interest in the fund, and the decree was incomplete and inconsistent.

The rights of the Southern Surety Company, so far as the same pertain to the money, bonds and warranties in the hands of the State, were fully adjudicated and determined by the decree of the circuit court. The only reservation made in the decree was that any question involving the claim of the appellees against the Southern Surety Company by virtue of the bonds signed by the company as surety was reserved for further consideration of the court. Inas-

much as the bill was limited to the establishment of a lien on the money, bonds or warranties due from the State, the question of the liability of the surety company, growing out of the execution of the bonds, was in no manner involved in this proceeding, and the Surety Company cannot complain because no judgment or money decree was entered against it for the reason that its rights were not prejudiced.

We find no reversible error and the decree will be affirmed.

*Decree affirmed.*