The suit is to enforce liens under the Municipal Mechanics' Lien act which provides that:
"Any person, who * * * shall hereafter * * * perform any labor or furnish any materials toward the performance or completion of any such contract * * * shall * * * have a lien for the value of such labor or materials, or both, upon the moneys in the control of said municipality due or to grow due under said contract * * *."
Morristown built a reservoir. DeLine Elmes were the general contractors. A balance of $4,477.96 is due them. Southern Surety Company, the contractors' bondsman, dispute the liens.
Barson Building and Construction Company contracted to use its outfit, a gasoline shovel and operators, in digging and loading dirt into trucks at $60 for ten hours work — a shift. The shovel, while on the work, was in its possession under the control of its employes who kept it in workable condition and with it did the work, shoveled and lifted the dirt into trucks; the claimant furnished the gasoline and *Page 203 
oil. There was no pay when there was no work — days when it rained or snowed — except the wage of the custodian of the shovel. Direction as to where on the works the shovel was to be used, was the extent of the contractor's supervision. Obviously, this was not a case of renting an instrumentality, as inDelaware River Quarry and Construction Co. v. Board of ChosenFreeholders of Mercer County, 88 N.J. Eq. 506. The claimant engaged to do the work with its shovel and men. In the case just mentioned it was pointed out that:
"There is a marked distinction between a charge for rental for instrumentalities used by a contractor and a claim for labor performed by the lienor by means of instrumentalities. In the latter instance, as stated in the last cited case (Post McCord v. City of New York, 86 Misc. Rep. 300) the claimant is entitled to a lien for the value of the labor so performed and the value is merely increased by the instrumentalities used in this labor. The nature of the engagement is the controlling element. * * * The language of the statute in this respect is broad and comprehensive, and the legislative intent manifestly was to afford protection to all within the statutory category who contribute labor toward the performance of public contracts, whether it be rendered personally or through agencies."
An item of $75 for transportation is not lienable. Also, there are credits which counsel will adjust, or they may be brought to the court's attention on the motion for the decree. The claimant has a lien.
William E. Thorne owned a "bulldozer," a gasoline driven contraption to level off heaps of dirt dumped on the works by trucks. Thorne personally manned the machine and did the work. The compensation was $30 a shift of ten hours. He performed labor; the bulldozer was a means. He is entitled to a lien. At times when Thorne was through working, the contractor's employes used the bulldozer. There is no lien for the use. Counsel will make the adjustment.
Howard S. Cramer, blacksmith, repaired trucks and *Page 204 
sharpened picks at his shop which were used on the job. This was work upon the contractor's plant, not toward the performance of the contract. Disallowed.
Carl W. Wrede furnished cross-ties to support rails upon which tram cars transported dirt from cut to fill. The cross-ties were bought for and used upon the job. They are not a part of the improvement but were, nevertheless, furnished towards the performance or completion of the contract. It is not essential to a lien that materials be incorporated in and form a part of the finished structure of a public improvement; it is sufficient that they were furnished to enable the contractor to carry on and carry out his contract. The measure of protection of the statute is broader than the general Mechanics' Lien act which gives a lien for labor or materials furnished for the erection and construction of buildings, but even under the latter the claim would be lienable analogously to a lien for materials furnished and later used for scaffolding. See Davis v. Mial,86 N.J. Law 167. Lien allowed.
A. Howell Mitchell furnished lumber for a platform for the contractor's steam shovel; it was used up in the work. It helped the contractor to perform his contract and the debt is a lien.
The Standard Oil Company furnished gasoline, grease, oil and kerosene for the contractor's machinery used in performing the contract. Applying our view of the statute that materials need not find their way into the structure to be lienable, we observe no distinguishing feature in this claim. Instead of men, the contractors used machines; in place of manual labor, they used and consumed the claimant's gasoline, c., to do machine work. The materials were supplied, not as a part of the plant, but to operate the plant. The plant was useless without motive power and that the claimant furnished — the means to perform the contract. That the materials were used in machinery or that they were incident to the machines, is beside the question. The materials would have been lienable had they been usefully sprayed on the *Page 205 
works with a garden hose. The question has been up and settled in other states: In Acker et al., Trading as Savannah Oil Co. v.Vanderboom et al., 235 Ill. App. 417, it was held that gasoline, oil and grease used by a contractor in machinery operated in the construction of a public road are proper subjects of a mechanics' lien under the Illinois statute allowing a lien for materials furnished any contractor having a contract for a public improvement. In Mid-Continent Petroleum Corporation v.Southern Surety Co., 225 Ky. 501, it was held that a claim for gasoline and lubricating oil was lienable and that a recovery could be had upon a surety company bond conditioned that the contractor should "pay for all labor performed or furnished and for all materials used in the carrying out of said contract." (The bond is substantially like that used in our municipal contracts.) In that case the court criticised the conclusions reached in some jurisdictions, that coal and gasoline are not, but dynamite and power are lienable.
"The reason for the distinction seems to be that explosives come directly in contact with the structure upon which the work is being done, while the gasoline is furnished merely as an adjunct to the machinery. If the excavating machines and drills used by the contractor in the instant case had been operated by hand power it could not be argued that the men furnishing such power would not be entitled to a lien for their labor. The gasoline furnished by appellant produced the power that did the work and was consumed in the operation. It was a substitute for hand power. It is argued that if gasoline and oil are lienable, then food and supplies for men and teams of a contractor are lienable. This does not necessarily follow. Gasoline and oil are consumed in the machinery in performing that particular work, while the food for men and teams not only sustains them during the progress of the work, but contributes to their existence thereafter. However, this question is not here. The line must be drawn somewhere, but we are unwilling to draw it in the twilight zone between explosives used to move dirt *Page 206 
and rock and fuel used to furnish motive power for machinery that does precisely the same work."
In City Trust, Safe Deposit and Surety Co. v. United States,147 Fed. Rep. 155, it is held that the surety on a bond under the federal statute which provides security to "all persons supplying * * * [the government contractor] * * * labor and materials in the prosecution of the work" provided for in such contract was liable to a person furnishing coal to the contractor engines. The court said:
"If the contractor, whether for purposes of economy or of expedition, elects to do this work by the power of steam instead of the power of human muscles, it is difficult to understand how it can be logically contended that such power is not supplied in the prosecution of the work, or that the cost of the coal which produces it should not be equally within the protection of the same statute."
In Brogan v. National Surety Co., 246 U.S. 257, it was held that food furnished a contractor and consumed by laborers, in circumstances where the contractor was forced to provide board, were materials used "in the prosecution" of the work within the meaning of the federal act and the bond given to secure the contract. See, also, Zipp v. Fidelity and Deposit Company ofMaryland, 76 N.Y. Supp. 386; National Surety Co. v. BratnoberLumber Co., 78 Wn. 601; Associated Oil Co. v.Commary-Peterson Co., Inc., 32 Cal.App. 582, and Franzen v.Southern Surety Co., 35 Wyo. 15.
In Schaghticoke Powder Co. v. Greenwich and JohnsonvilleRailway Co., 183 N.Y. 306, it is held that dynamite and powder used in blasting are lienable under Mechanics' Lien act (not for public improvements). The court said:
"The argument that dynamite is not a material, but a part of the contractor's plant, which, like picks and shovels or mechanic appliances, are used in the performance of work, but are not considered materials furnished within the purview of the statute, seems to us inherently unsound. A steam shovel, an engine and boiler, picks, shovels, crowbars, and the like are tools and appliances, which, while used in the *Page 207 
doing of the work, survive its performance and remain the property of their owner. No so, however, with materials that are used up in the performance of the work, and are thereafter invisible except as they survive in tangible results. We think that explosives, when used as substitutes for other recognized `materials,' are covered by the same principle. They enter into and form a part of the permanent structure, quite as much as the earth, rails, ties, culverts, and bridges that we can see and feel. * * * It may be admitted that dynamite used in blasting rock or breaking up earth does not, in a narrow and technical sense, enter into and remain a part of the permanent structure which contributes to the improvement of real estate. The same thing may be said of the labor performed upon it. But in a broad and practical sense explosives so used might be said to partake of the nature of both materials and labor. They can be regarded as materials in so far as they constitute physical substances which are furnished and used in the performance of the work for which they are designed. They might also be considered as substitutes for labor to the extent that they contain a potential energy which takes the place of manual labor or mechanical appliances."
The same conclusions were reached in Giant-Powder Co. v.Oregon Pacific Railway Co., 42 Fed. Rep. 470 (powder); RapaunoChemical Co. v. The Greenfield and Northern Railway Co.,59 Mo. App. 6 (powder); Hercules Powder Co. v. Knoxville, La Foletteand Jellico Railroad Co., 113 Tenn. 382; 2 L.R.A. (N.S.) 288note; Johnson v. Starret, 127 Minn. 138 (coal, gasoline and dynamite).
The Standard Oil Company is entitled to a lien.
 A decree will be advised to conform to these views. *Page 208